**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**DAVID T. CURRY,**

     **Plaintiff,**

**vs.**                     **Case No. 4:18cv207-RH/CAS**

**MARK S. INCH, etc., et al.,**

     **Defendants.**

                              **/**

## REPORT AND RECOMMENDATION

Plaintiff, pro se, was granted leave to file a second amended

complaint, and Plaintiff filed a second amended complaint on October 19,

2018, by the mailbox rule.  ECF No. 22, 23, 25.  The second amended

complaint is the operative complaint and proceeds against the Secretary of

the Florida Department of Corrections and two physicians.  The Secretary

filed a motion to dismiss the second amended complaint.  ECF No. 26.

Thereafter, Mark S. Inch was appointed Secretary and was automatically

substituted as a defendant in his official capacity only.  ECF No. 38.

Although motions to dismiss have also been filed by the two physicians,

this Report and Recommendation addresses only the motion to dismiss

filed by the Secretary.

# I. Allegations of the Complaint

## A. Factual allegations

Plaintiff alleges that during the time he has resided in the Florida Department of Corrections (FDC), he has had chronic Hepatitis-C (HCV) and was not provided appropriate treatment for that condition.  ECF No. 23 at 4 (¶ 10).  He alleges that when he entered the FDC in January 2015, the FDC was provided medical records showing that Plaintiff has chronic stage-4 HCV.  *Id.* at 16 (¶ 55).  He alleges that Defendants knew that he had advanced-stage liver disease and that he was in desperate need of direct-acting antiviral (DAA) drugs, such as Sovaldi, Olysio, Harvoni, Viekira Pak, Daklinza, Technivie, Zepatier, and Epclusa, which are known to cure 90-95% of patients with all types of HCV with virtually no side effects and easy administration.  *Id.* at 16 (¶ 55); 9 (¶ 31).

Plaintiff alleges that Defendants withheld treatment with these DAA drugs and knew that the risk of doing so would cause significant harm to Plaintiff's liver.[1]  *Id.* at 16 (¶ 55).  He alleges that despite consensus among medical professionals that all persons with HCV should be treated with the

---

[1] HCV is a viral infection of the liver that causes inflammation that can result in scarring of the liver, which can significantly impair liver function in filtering toxins from the blood and other functions.  Hoffer v. Jones, 290 F. Supp. 3d 1292, 1294 (N.D. Fla. 2017).  DAAs are "direct-acting antivirals" that have "proved to be "a revolution in medicine," but are "very expensive."  *Id.* at 1296.  The medications have proved to be about 95% effective in curing HCV with very few side effects.  *Id.*

DAA medications, each Defendant had a policy, practice and custom of not providing DAA medications to prisoners in FDC such as Plaintiff. *Id.* at 15 (¶ 51). He alleges that this policy, practice, or custom caused and continues to cause unnecessary and wanton infliction of pain and an unreasonable risk of serious damage Plaintiff's health. *Id.* (¶ 52).

Plaintiff alleges that on February 24, 2015, he was transferred to Gulf Correctional Institution-Annex and placed under the care of Dr. Simone Vilchez, and tests were performed diagnosing him with Stage 4 cHCV (chronic HCV). *Id.* at 16 (¶ 56). He alleges that Dr. Vilchez told him that he was in desperate need of treatment but FDC does not provide HCV treatment because it is too expensive. *Id.*

Plaintiff filed a number of grievances beginning on April 28, 2015, seeking the recommended treatment for his HCV.[2] All the grievances were

---

[2] Plaintiff stated in a June 2, 2015, grievance that he had been promised liver treatment by Dr. Scott Kennedy for two years but remained without treatment, causing irreparable damage to his liver. ECF No. 26 at 18. Regarding Dr. Kennedy, this Court explained in Hoffer v. Jones, 290 F. Supp. 3d 1292 (N.D. Fla. 2017):

> When DAAs came out in late 2013, they were not included on the formulary. Nevertheless, Dr. Scott Kennedy (who worked for Corizon at the time) decided to assemble twelve inmates (the "Kennedy 12") with the goal of treating them with DAAs. By the end of 2014, the Kennedy 12 had been assembled and thoroughly evaluated. But the Kennedy 12 were never given any DAAs because the necessary funds were not available. This was so despite the fact that all twelve inmates showed signs of advanced liver damage. (record citations omitted).

*Id.* at 1297-98.

rejected for procedural errors.  Even so, the grievances, many of which were filed directly with the Secretary, put the Secretary on notice of his serious chronic HCV and the risks attendant to non-treatment, the fact that he developed a lump on his liver, and that he was denied treatment with DAA medication because of the high cost.

Plaintiff alleges that he filed a formal grievance on February 20, 2017, with Warden Hodges at Okaloosa C.I. complaining that Dr. Luis Lopez was not following HCV infection protocols and was refusing to order appropriate treatment for him in accord with FDC's Health Services Bulletin (HSB) 15.03.09 Supp. # 3.  *Id.*  The formal grievance also complained that Dr. Lopez told Plaintiff that even though his tests showed a high risk for complications and disease progression that would require a more urgent consideration for treatment, FDC is not treating any HCV inmates and does not plan to without civil litigation and additional legislative budgeting. Plaintiff requested proper HCV treatment.  *Id.* (¶ 67; see Ex. A to Plaintiff's response to motion ECF No. 37).  Plaintiff further alleges in his second amended complaint that the appeal of the formal grievance was denied (on March 6, 2017), with the response that Plaintiff was being monitored every 90 days, that his current APRI score is 1.9, and that his labs were being

reported into the monthly tracker to be considered for treatment.  ECF No.

23 at 21-22 (¶ 67).

Plaintiff alleges that he filed an appeal with the Secretary of FDC on

March 9, 2017.  *Id.* at 22 (¶ 67).  He complained that he was still being

denied HCV treatment even though his scores placed him in the Priority

Level 2, High Priority for treatment classification and he requested proper

treatment for his serious medical condition.  *Id.* (*see also* Ex. A to Plaintiff's

response to motion to dismiss, ECF No. 37).  The Secretary's office

responded on July 7, 2017, denying the appeal and advising that his

treatment was being deferred, that he would be monitored, and that if he

had problems, sick call was available.  ECF No. 23 at 22 (¶ 67); (*see*

Exhibit to Plaintiff's response to motion to dismiss ECF No. 37 at 24).

Plaintiff alleges that this put the Secretary, then Defendant Jones, on fair

notice of his serious medical condition that had deteriorated to dangerous

levels qualifying him for high priority treatment and that her subordinates

were acting unlawfully by ignoring the HSB guidelines and refusing to

provide him HCV treatment.  *Id.*  Plaintiff alleges that Defendants'

deliberate indifference to his medical needs caused his liver to deteriorate

to his currently grave condition.  *Id.* (¶ 68).

### B. Plaintiff's Claims

Plaintiff realleged all the factual allegations set forth in his complaint for each of his counts, and made the following claims:

### Count 1.  Deliberate Indifference as to All Defendants

Plaintiff claims that Defendants[3] were well aware of his grave medical needs but intentionally failed and refused to provide necessary treatment to address the needs, harming him by causing continued suffering and exposure to liver failure, liver cancer, and death.  *Id.* at 23 (¶ 69).  He claims that Defendants have at all times been aware of the substantial risk of serious harm and that their deliberate indifference, denial of treatment, and grossly inadequate to non-existent care have caused wanton infliction of pain and punishment in excess of that authorized by law in violation of the Eighth Amendment.  *Id.* at 23-24 (¶¶ 71-77).

### Count 2. Failure to Supervise to Provide Adequate Medical Care as to Defendant Julie L. Jones

Plaintiff claims that Defendant Jones, acting within the authority and under color of state law, by and through her agents and employees, "failed adequately to supervise her agents and employees," including Drs. Vilchez and Lopez, to ensure provision of adequate medical care to prisoners at

---

[3] Plaintiff has also sued Dr. Simone Vilchez, M.D., and Dr. Luis Lopez, M.D.

FDC.  *Id.* at 24 (¶ 79).  Plaintiff claims that Jones' deliberate indifference is actionable under § 1983 and that her willful and deliberate actions or inaction relative to Plaintiff's serious medical needs have directly and proximately caused Plaintiff to experience loss of enjoyment of life, loss of quality of life, severe pain and suffering, and monetary loss for future earnings.  *Id.* at 24 (¶¶ 80-81).

### Count 3.  Violation of 42 U.S.C. § 1983—Inadequate Medical Care as to Dr. Vilchez and Dr. Lopez

Count 3 will need not be discussed as it is unrelated to the motion to dismiss filed by the Secretary.  *Id.* at 25 (¶¶ 82-84).

### Count 4. Violation of State Law—Negligence as to All Defendants[4]

Plaintiff claims that all Defendants, individually and by and through their agents and employees, acting within the scope of their authority, were "intentionally negligent" in failing to provide him with adequate medical care for his HCV.  He further claims that as a direct and proximate result of the negligence, he has experienced loss of enjoyment of life, loss of quality of life, severe pain and suffering, and monetary loss for future earnings.  *Id.* at 26 (¶¶ 86-87).

---

[4] For purposes of the motion to dismiss, this Count addresses Defendants Inch and Jones.

### Count 5. State Law Claim—Negligent Supervision as to Defendant Jones

In Count 5, Plaintiff claims that Defendant Jones gave Drs. Vilchez and Lopez authority to provide for Plaintiff's medical needs and that "Defendants owed [Plaintiff] a duty to provide him with reasonable adequate medical care during his incarceration" and to supervise agents and employees to ensure reasonably adequate medical care is provided. *Id.* at 27 (¶¶ 89-90). He claims that Defendant Julie L. Jones was "intentionally negligent" in failing to supervise Drs. Vilchez and Lopez to ensure reasonably adequate medical care was provided to Plaintiff; and that as a direct and proximate result of the negligent supervision, Plaintiff suffered loss of enjoyment of life, loss of quality of life, severe pain and suffering, and monetary loss for future earnings. *Id.* (¶¶ 91-92).

### Count 6—Violation of the Americans with Disabilities Act, 42 U.S.C. § 12131, et seq., (as to Defendants Inch and Jones)

Plaintiff claims in Count 6 that each Defendant qualifies as a "public entity" within the meaning of 42 U.S.C. § 12131 and 28 C.F.R. § 35.104. *Id.* at 28 (¶ 95). He contends that his diagnosed cHCV (chronic HCV) qualifies as a physical impairment under 42 U.S.C. § 12103 and 28 C.F.R. § 35.108(a) and (b). *Id.* (¶ 96). He contends that the physical impairment substantially limits one or more of Plaintiff's major life activities and

operation of major bodily functions, including operation of the liver.  *Id.*
Plaintiff alleges that he has a record and history of having an impairment
that substantially limits one or more major life activities, and is regarded by
Defendants as having an impairment that substantially limits one or more
major life activities.  *Id.* 28-29 (¶¶ 97-98).

Plaintiff claims that by withholding medical treatment for his HCV, but
providing medical treatment to others with other disabilities and those not
disabled, Defendants have excluded Plaintiff from participating in and
receiving the benefits of Defendants' services, programs, and activities
such as medical services because of his disability.  *Id.* at 29 (¶¶ 99-100).
He alleges this amounts to discrimination under 42 U.S.C. § 12132 and 28
C.F.R. § 35.130(a).  *Id.* (¶ 101).  He claims that Defendants utilized criteria
or methods of administration that have the effect of subjecting Plaintiff to
discrimination and defeating or substantially impairing the accomplishment
of objectives of medical treatment for HCV in violation of 28 C.F.R.
§ 35.130(b)(3).  He contends that as a result of the actions and omissions
of Defendants, he has suffered and continues to suffer harm in violation of
his ADA rights.  *Id.* at 30 (¶ 105).

### Count 7—Rehabilitation Act, 29 U.S.C. §§ 791-794a (as to Defendant's Inch and Jones)

Plaintiff claims that under section 504 of the Rehabilitation Act, 29 U.S.C. § 701, et seq., and 29 U.S.C. §§ 791-794, et seq., and its implemented regulations, Defendants are a program or activity receiving federal financial assistance. *Id.* (¶¶ 107-08). He claims that Defendants denied him access to the benefits of several programs or activities and to the opportunity afforded others to participate in programs or activities solely because of his disability. *Id.* at 30-31 (¶¶ 109-10). He contends that Defendants have known of these violations but with deliberate indifference failed to correct them; and that as a direct and proximate result of this exclusion, he has suffered and continues to suffer harm and violations of his rights under the RA. *Id.* (¶¶ 113-114).

### Prayer for Relief

Plaintiff seeks actual and compensatory damages, punitive damages, and other equitable and legal relief deemed appropriate. *Id.* at 32 (¶¶ A-D).

## II. Motion to Dismiss by Defendants Inch and Jones

### A. Failure to Exhaust Administrative Remedies for Deliberate Indifference Claim as to Defendant Inch in his Official Capacity

Defendant Inch in his official capacity moves to dismiss Count 1 of the Second Amended Complaint for failure to exhaust administrative

remedies on the ground that all but one of Plaintiff's grievances failed to comply with the rules governing the grievance procedure, and the one grievance and appeal in 2017 that complied with the rules failed to grieve the issue that Defendant Inch in his official capacity for the FDC established a policy or custom to deny inmates treatment for HCV.  ECF No. 26 at 25, 27.

Defendants note the history of Plaintiff's unsuccessful, incorrectly filed grievances beginning in 2015.  Defendants assert that Plaintiff failed to properly grieve any of the issues contained in the 2015 grievances and appeals and has therefore failed to exhaust administrative remedies as to those issues.  ECF No. 26 at 21.  Nevertheless, Defendants note that on February 20, 2017, Plaintiff sent a formal grievance to the warden complaining that Dr. Lopez would not follow HCV infection management protocols, refused to order the appropriate treatment regimen and lab tests, and would not treat him in accordance with FDC-HSB 15.03.09 Supplement #3.  ECF No. 26 at 22 (citing Ex. I to motion).  Plaintiff also complained in his grievance that Dr. Lopez told him that despite Plaintiff's high risk for complications and disease progression, "FDC is not treating any HCV inmates and does not intend to without civil litigation and

additional congressional budgeting." *Id.* at 22-23 (citing Ex. I to motion). Plaintiff asked in the grievance to receive proper HCV treatment. *Id.*

Plaintiff received a response dated March 6, 2017, in which Dr. Lopez and the Warden stated that the grievance was denied because Plaintiff had initial lab tests as recommended in HSB 15.03.09 Supplement 3, that Plaintiff was being monitored every 90 days in the Chronic Illness Clinic, that his current APRI score was 1.9, and that his current Child Pugh classification was Class A. The response further stated, "Your case has been reported with all lab results required into the monthly tracker to be considered for treatment." ECF No. 26 at 23 (citing Ex. I to motion).

Plaintiff timely appealed the denial of the formal grievance on March 9, 2017. ECF No. 26 at 24 (citing Ex. J to motion). The appeal complained of denial of medical treatment for a serious medical condition and disputed the response that all labs recommended by HSB 15.03.09 Supplement #3 were being done. (Ex. J to motion). Plaintiff also contended in the appeal that Dr. Lopez did not know how to calculate the APRI and Child Pugh scores, and that even with an APRI score of 1.9, Plaintiff was "Priority Level 2-High Priority" for treatment and was "still being denied treatment." *Id.* The appeal was denied on July 7, 2017, stating that his treatment was "deferred" and that he would continue to be monitored in the chronic illness

clinic including diagnostic testing, and that if he should "experience problems, sick call is available so that you may present your concerns to your health care staff."  (Ex. J to motion; *see also* Plaintiff's Ex. A to Plaintiff's response to motion to dismiss, ECF No. 37 at 24).

The Secretary contends that even though the formal grievance and appeal filed in 2017 were timely and in compliance with the rules, Plaintiff did not expressly grieve the claim that the Secretary established a policy, custom, or procedure that resulted in deliberate indifference to his serious medical needs brought on by HCV.  ECF No. 26 at 25, 27-28.

"The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law."  McKart v. United States, 395 U.S. 185, 193 (1969); Woodford v. Ngo, 548 U.S. 81, 88 (2006).  The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust "such administrative remedies as are available" prior to filing a § 1983 action. 42 U.S.C. § 1997e(a).  The Supreme Court has clarified that exhaustion means "proper exhaustion."  Woodford, 548 U.S. at 95 (cited in Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015)).

To determine "proper exhaustion" in prisoner civil rights actions, courts look to the requirements of the "prison grievance system." Woodford, 548 U.S. at 95 ("The benefits of exhaustion can be realized only

if the prison grievance system is given a fair opportunity to consider the

grievance.").  Thus, a prisoner must comply with "rules that are defined not

by the PLRA, but by the prison grievance process itself."  Jones v. Bock,

549 U.S. 199, 218 (2007).  "Compliance with prison grievance procedures,

therefore, is all that is required by the PLRA to 'properly exhaust.' "  *Id.*

Chapter 33-103 generally requires an inmate to file an informal

grievance, formal grievance, and then an appeal to the Office of the

Secretary.  Fla. Admin. Code R. 33-103.007(1).  Medical grievances may

be initiated by first filing a formal grievance.  Fla. Admin. Code R. 33-

103.006((3)(e).  In limited circumstances, an inmate may also file a "direct"

grievance to the Secretary.  Fla. Admin. Code R. 33-103.007(3(a).  The

Department's procedures specify the manner in which grievances must be

filed, and provide time limits for doing so.  *See* Fla. Admin. Code R. 33-

103.011.  The Department's procedures concerning the grievance steps

suggest that after completing these steps, nothing further is required before

initiating a lawsuit.  *See* Fla. Admin. Code R. 33-103.011(4) (noting that

expiration of time limits "at any step in the process shall entitle the

complainant to proceed to the next step of the grievance process.").

The administrative rules governing inmate grievances do not require

the inmate to allege in his grievance a legal claim or present a legal theory.

As stated in the pertinent rule, a grievance is "[a] written complaint or

petition, either informal or formal, by an inmate concerning an incident or

condition within an institution, facility, or the Department which affects an

inmate complainant personally." Fla. Admin. Code R. 33-103.002(6). As

this Court has explained:

> Plaintiff was not required to do any more. "Defendant has not
> shown that a battalion of attorneys sit ready to review prisoner
> grievances for legal claims in the grievance process, and that
> the grievance rules require the presentation of each possible
> legal theory involved in each issue raised." Young v. McNeil,
> No. 4:08cv44-SPM/WCS, 2009 WL 2058923, at *5 (N.D. Fla.
> July 13, 2009). Because the Department had the opportunity to
> address the issue challenged in this lawsuit, and Plaintiff
> completed each step of the grievance program, the motion to
> dismiss for failure to exhaust should be denied.

Richards v. Crews, No. 4:13-CV-30-MW/CAS, 2014 WL 988634, at *5

(N.D. Fla. Mar. 12, 2014) (not reported in F. Supp. 3d).

In his 2017 grievance and appeal, Plaintiff complained that the

medical department refused to treat his HCV, that being enrolled in the

clinic and having tests done was not "treatment," and that the FDC refused

to provide the appropriate treatment for his HCV. The grievance and

appeal put the Secretary on notice of Plaintiff's complaint that the severity

of this HCV condition was being ignored and he was not provided treatment

for non-medical reasons. Thus, his grievance provided an opportunity to

address the problem and resolve the dispute before being "haled into

court." <u>Jones</u>, 549 U.S. at 204.  The motion to dismiss Count 1 for failure to exhaust administrative remedies should be denied.

### B. No Causal Connection Between Defendant Jones in her Individual Capacity and Any Constitutional Violation

Defendant Jones moves to dismiss Counts 1 and 2 of the Second Amended Complaint—the deliberate indifference claim and the failure to supervise claim—against her in her individual capacity on the grounds that Plaintiff fails to allege any facts that would show a causal connection between her actions and any constitutional injury.  ECF No. 26 at 4-9.

### 1. Deliberate Indifference (Count 1)

The Supreme Court has held that "deliberate indifference" to a prisoner's serious medical need violates the Eighth Amendment's prohibition of cruel and unusual punishment.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976).  In order to state a claim, a prisoner must allege "acts or omissions sufficiently harmful" to evidence "deliberate indifference."  *Id.* at 105-06.  To establish deliberate indifference, Plaintiff must show that the Defendants had "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence."  <u>Wright v. Langford</u>, 562 F. App'x 769, 778 (11th Cir. 2014) (unpublished) (citing <u>Burnette v. Taylor</u>, 533 F.3d 1325, 1330 (11th Cir. 2008)).  Plaintiff must show that he had "(1) an objectively serious medical

need that . . . that, if left unattended, pose[d] a substantial risk of serious harm," and that (2) prison response to this need was "poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." Dennis v. Warden, Ware State Prison, 648 F. App'x 918, 920 (11th Cir. 2016) (unpublished) (citing Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000)). An objectively serious medical need is "one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." Wright, 562 F. App'x at 778.

Deliberate indifference may be established by a showing of delaying treatment for non-medical reasons, "grossly inadequate care," "a decision to take an easier but less efficacious course of treatment," and "medical care which is so cursory as to amount to no treatment at all." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) (quoted in Colardo-Keen v. Rockdale Cty., Ga., --- F. App'x ----, 2019 WL 2245922, at *10 (11th Cir. May 24, 2019)); see also McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (unpublished) (same).

Defendant Jones does not dispute that HCV is a serious medical need. ECF No. 26 at 4. She contends, however, that no facts are alleged

which show any purposeful action on her part to deprive Plaintiff of a constitutional right.  She argues that she cannot be held liable on the basis of respondeat superior or vicarious liability unless the facts show that she either personally participated in the injury or there is some causal link between her conduct and the subordinate's infliction of the constitutional injury.

Jones also contends that no facts are alleged to support Plaintiff's conclusory allegation that Jones knew her subordinates were acting unlawfully and that she made no attempt to stop them.  Jones contends that Plaintiff's factual allegations fail to connect Jones to the actions of any employees of the FDC who would have been her subordinates.  Jones states that Drs. Vilchez and Lopez are contract health care providers employed by Centurion, not employees of the FDC; thus, Jones did not supervise them.  ECF No. 26 at 8.

Plaintiff's complaint sufficiently alleged a causal connection to Defendant Jones.  Plaintiff alleged that FDC had a policy to refuse HCV treatment without litigation or further funding.  At the time that alleged policy was created, Jones was Secretary of FDC and responsible for formulating that alleged policy.  Plaintiff alleged that Jones created the policy to

intentionally deny DAA treatment to save money and not for medical reasons.

The Eleventh Circuit has explained:

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."  Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir.1999) (internal quotation marks and citation omitted); Gonzalez [v. Reno, 325 F.3d [1228, 1235 (11th Cir. 2003)] (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability).  Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. . . .  **The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so**." Gonzalez, 325 F.3d at [1234], 2003 WL 1481583, at *5 (quoting Braddy v. Fla. Dept. of Labor & Employment, 133 F.3d 797, 802 (11th Cir.1998)); Brown [v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)]. **Alternatively, the causal connection may be established when a supervisor's " 'custom or policy . . . result[s] in deliberate indifference to constitutional rights' "** or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Gonzalez, 325 F.3d at [1235] (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)); Hartley, 193 F.3d at 1263; see also Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1560-61 (11th Cir. 1993).  "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Gonzalez, 325 F.3d at [1234].

Cottone v. Jenne, 326 F.3d 1352, 1360-61 (11th Cir. 2003) (some citations omitted) (emphasis added).

Because the second amended complaint alleges sufficient facts which, if true, would establish that a policy, practice and custom crafted by Jones resulted in deliberate indifference to Plaintiff's serious medical need—a constitutional deprivation—the motion to dismiss Count 1 as to Defendant Jones in her individual capacity should be denied.[5]

## 2. Failure to Supervise Medical Staff (Count 2)

As to the claim of failure to supervise medical staff and direct adequate medical care for Plaintiff's HCV, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone, 326 F.3d 1360 (quoting Hartley, 193 F.3d 1235). The liability of a supervisor occurs when the supervisor personally participates in the alleged unconstitutional

---

[5] Defendants' motion to dismiss does not seek to dismiss the deliberate indifference claim against the Secretary of the Florida Department of Corrections in his official capacity and this report and recommendation does not address that issue. Notably, this Court stated in Hoffer v. Inch, --- F. Supp. 3d ---- , 2019 WL 1747074, at *1 (N.D. Fla. Apr.18, 2019), that FDC admits that cHCV is a serious medical need and that FDC's "failure to treat inmates with cHCV was due to lack of funding;" and that "[i]n short, FDC admits this Court's finding of deliberate indifference" in regard to HCV-infected inmates. Id. Hoffer v. Inch made permanent the preliminary injunction issued in Hoffer v. Jones, 290 F. Supp. 3d 1292 (N.D. Fla. 2017), appeal filed sub nom Hoffer v. Secretary, No. 19-11921 (11th Cir. May 17, 2019).

conduct or where a causal connection exists between the actions of the

supervisor and the constitutional deprivation.  <u>Cottone</u>, 326 F.3d at 1360.

Plaintiff alleged that the Secretary of FDC created a policy that

medical staff would not treat HCV with DAA drugs due to the high cost and

that this policy resulted in a constitutional deprivation.  Thus, under this

policy, the Secretary allegedly directed medical staff to not provide the

treatment even if it was medically warranted.  Count 2 is duplicative of the

claim stated in Count 1.  Because nothing more is gained by retaining the

failure to supervise claim against the Secretary, Count 2 should be

dismissed.

### C. Tort Claims under Section 768.28, Florida Statutes

Defendants Inch and Jones move to dismiss Plaintiff's Counts 4 and

5 alleging state law tort claims pursuant to section 768.28, Florida Statutes,

for "intentional negligence" as to all defendants and failure to supervise by

"intentional negligence" as to Julie L. Jones.

Defendant Inch, in his official capacity, moves to dismiss the tort

claims against him on the ground that Plaintiff failed to comply with section

768.28(6)(a), Florida Statutes, which requires that before filing suit against

the state or any of its agencies the plaintiff must present the claim in writing

to the agency and also to the Department of Financial Services and obtain

a denial of the claim in writing.  § 768.28(6)(a), Fla. Stat. (2018).  Plaintiff

alleged in his second amended complaint that he complied with section

768.28 by sending notice of his claim to the Secretary of the Florida

Department of Corrections by certified mail prior to filing suit.  ECF No. 23

at ¶ 11.  In his response to the motion to dismiss, Plaintiff asserts that he

also provided timely written notice of the claim to the Florida Department of

Financial Services.  ECF No. 37 at 14.  According to Plaintiff's exhibit B to

his response, he provided a copy of a Notice of Claim to the Florida

Department of Financial Services by the mailbox rule on April 4, 2018, prior

to filing the original complaint in this case on April 13, 2018.  Plaintiff did

not, however, show denial of the claim by the Department of Financial

Services prior to filing suit, which is a condition precedent that is required

by section 768.28(6)(b).  Defendant also points out that Plaintiff failed to

serve process on the Department of Financial Services as required by

section 768.28(7), Florida Statutes.  Because Plaintiff failed to meet the

conditions precedent for filing state tort claims against Defendant Inch in

his official capacity as Secretary of the Florida Department of Corrections,

Counts 4 and 5 should be dismissed as to Inch in his official capacity without prejudice.[6]

Defendant Jones, in her individual capacity, moves to dismiss both counts alleging intentional tort. Section 768.28(9), Florida Statutes, provides in pertinent part that no officer, employee, or agent of the state shall be personally liable in tort as a result of any act, event, or omission in the scope of his or her employment unless such officer acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Plaintiff's allegations that Jones knowingly created a policy to deny efficacious treatment to inmates suffering from chronic HCV, including Plaintiff, for non-medical reasons support a claim of wanton and willful disregard of human rights or safety by Jones. The motion to dismiss Count 4 against Jones in her individual capacity should be denied.

Count 5 alleges negligent failure by Jones to supervise Drs. Vilchez and Lopez to ensure reasonably adequate medical care. As discussed in regard to Count 2, Jones cannot be held liable on the basis of respondeat

---

[6] "Both Florida and federal courts have recognized that dismissal without prejudice is appropriate for claims that run afoul of this statute." <u>Gluck v. Hospodavis</u>, No. 14-61385-CIV, 2014 WL 4672431, at *2 (S.D. Fla. Sept. 18, 2014) (not reported in F. Supp. 3d).

superior and the gravamen of Plaintiff's complaint for Jones' negligence is comprehensively encompassed in Count 4. Accordingly, the motion to dismiss Count 5 should be granted.

### D. Americans with Disabilities Act and Rehabilitation Act

Plaintiff contends in Counts 6 and 7 that the Secretary violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, *et seq.*, and the Rehabilitation Act (RA), 29 U.S.C. § 794(a). ECF No. 23 at 27-31. Discrimination claims under the RA are governed by the same standards used in ADA cases. Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000). The only relevant difference is that the RA has a federal funding requirement. Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "To state a claim of discrimination under Title II, a claimant must prove: (1) that he is a qualified individual with a disability; and (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's

disability."  Bircoll v. Miami–Dade Cnty., 480 F.3d 1072, 1083 (11th Cir.

2007); Owens v. Sec'y, Fla. Dep't of Corr., 602 F. App'x 475, 477 (11th Cir.

2015) (same) (unpublished).

Plaintiff does not cite in what capacity he sues the Secretary, but an

individual capacity claim cannot proceed for violations of the ADA or RA.

Defendant Inch may be sued for violation of the ADA and RA in his official

capacity to the extent that he stands in the place of the Florida Department

of Corrections, his employer.  *See, e.g.*, Hunt v. Warden, 748 F. App'x 894,

898 (11th Cir. 2018) (unpublished) ("Only public entities are liable for

violations of Title II of the ADA.") (quoting Edison v. Douberly, 604 F.3d

1307, 1308 (11th Cir. 2010)); *see also* Alsbrook v. City of Maumelle, 184

F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc) (" '[P]ublic entity'. . . . as it is

defined within the statute, does not include individuals.").  This claim is

construed as having been brought only against Defendant Inch, as

Secretary of the Florida Department of Corrections in his official capacity.

Defendant Inch contends that Plaintiff has failed to allege facts

demonstrating that he is a qualified individual with a disability—that is, he

has a physical or mental impairment that substantially limits one or more

major life activities.  ECF No. 26 at 32-33.  Defendant Inch also contends

that Plaintiff has not alleged facts that demonstrate how he has been excluded from the benefit of medical services due to his HCV.

"Although 'the ADA . . . was not intended to apply to decisions involving . . . medical treatment,' Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1289, 1294 (11th Cir. 2005), the Supreme Court has made clear that 'medical "services" ' fall within the ambit of Title II." Hoffer v. Inch, --- F. Supp. 3d. ----, 2019 WL 1747074, at *3 (N.D. Fla. Apr. 18, 2019) (quoting Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998)); *see also* United States v. Georgia, 546 U.S. 151, 157 (2006). Moreover, in Hoffer v. Inch, this Court stated, " Defendant [Inch, in his official capacity] does not dispute that a prison inmate can state a Title II ADA claim for medical services."[7] 2019 WL 1747074, at 3.

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102 (emphasis added). A claimant only needs to satisfy one of those definitions. Gordon v. E.L. Hamm & Assocs.,

---

[7] As regards the ADA and RA, the court in Hoffer proceeded to address only the question of whether the inmates could assert disability as a class, and concluded that the ADA and RA claims required individualized assessment. Hoffer v. Inch, 2019 WL 1747074, at *4.

Inc., 100 F.3d 907, 911 (11th Cir. 1996).  Major life activity is defined in the

ADA as including "the operation of a major bodily function."  42 U.S.C.

§ 12102(2)(B).  Major life activity is defined in 28 C.F.R. § 35.108(c)(1)(ii) to

include "the operation of an individual organ within a body system."  In

evaluating a Rule 12 motion to dismiss, the Court must accept as true all

factual allegations in the complaint and "construe them in the light most

favorable to the plaintiff."  Baloco ex rel. Tapia v. Drummond Co., 640 F.3d

1338, 1345 (11th Cir. 2011); Hunnings v. Texaco, Inc., 29 F.3d 1480, 1483

(11th Cir. 1994).  Viewing the factual allegations in a light most favorable to

Plaintiff, he has alleged that his HCV is a physical impairment that

substantially limits one or more major life activities.  Plaintiff alleged that his

chronic HCV impaired the function of his liver, and that because of scar

tissue, his liver has reduced function in filtering toxins from the blood.  *Id.* at

6, 17, 19.  Plaintiff sufficiently alleged he is a qualified individual with a

disability.

Defendant Inch argues that the allegations show Plaintiff has been

receiving health care services, including monitoring and lab tests, and that

the ADA and RA do not provide a cause of action to challenge medical

treatment provided for their underlying disabilities.  ECF No. 2 at 34-35.

However, Plaintiff alleges that the monitoring and testing done for several

years is not medical treatment, and that the efficacious treatment likely to cure his HCV has been denied him due to non-medical reasons pertaining to his particular disability, specifically the high cost of treatment of HCV.  *Id.* at 10, 11, 15, 16, 21.  For these reasons, Plaintiff's complaint does not run afoul of the principle cited by Defendant Inch.  *See also* Stafford v. Wexford of Ind., LLC, No. 1:17-cv-00289-JMS-MJD, 2017 WL 4517506, at *3 (S.D. Ind. Oct. 10, 2017) ("Plaintiffs do not complain[ ] about the quality of care administered by Wexford; rather, they assert that Wexford has refused to treat Plaintiffs' disabilities, which is actionable under the ADA."); Johnson v. Bryson, No. 5:16-cv-453-CAR-MSH, 2017 WL 3951602, at *1 (M.D. Ga. Sep. 8, 2017) ("[T]he ADA is not wholly inapplicable to claims based on deliberate indifference to an inmate's medical condition.").  For the foregoing reasons, the motion to dismiss Counts 6 and 7 by Defendant Inch in his official capacity as Secretary of the FDC should be denied.  To the extent that Plaintiff's second amended complaint sought to sue Defendant Jones in her individual capacity, the motion to dismiss Counts 6 and 7 as they apply to Defendant Jones should be granted.

### E. Qualified Immunity as to Defendant Jones in her Individual Capacity

Defendant Jones asserts qualified immunity in her individual capacity because she contends the amended complaint does not demonstrate that

she committed any constitutional violation.  Qualified immunity shields government officials sued in their individual capacities from liability against a plaintiff's § 1983 claims if their conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Grider v. City of Auburn, 618 F.3d 1240, 1254 (11th Cir. 2010) (quoted in McNeeley v. Wilson, 649 F. App'x 717, 720-21 (11th Cir. 2016) (unpublished)).  The initial inquiry is whether the public official proves "that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." McNeely, 649 F. App'x at 721.  The next step is to determine: (1) "whether the plaintiff's allegations, if true, establish a constitutional violation" and (2) "whether the right violated was 'clearly established.' " Id.  The law was clearly established prior to Plaintiff's many requests for HCV treatment that deliberate indifference to a serious medical need is a violation of the Eighth Amendment.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  Here, the facts as alleged by Plaintiff, viewed in the light most favorable to Plaintiff, show a constitutional violation—that Jones had a policy, practice, or custom to delay and deny efficacious HCV treatment due to high cost.  Lack of funding has long been found to be no excuse for the failure to provide treatment.  See Hoffer v. Jones, 290 F. Supp. 3d at 1300 n.15 (citing Harris v. Thigpen, 941 F.2d 1495, 1509 (11th Cir. 1991));

Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 705 (11th Cir. 1985)).  If

proven that Plaintiff was denied treatment for his HCV for non-medical

reasons such as cost, that is a constitutional violation which has been

clearly established.  Defendant Jones is not entitled to qualified immunity.

### F. Immunity under Eleventh Amendment for Money Damages as to the Secretary in his Official Capacity

Plaintiff seeks to recover monetary damages from the Defendants.

Defendant Inch, who appears in this case in his official capacity, moves to

dismiss any claim against him for monetary damages based on Eleventh

Amendment immunity.  To the extent plaintiff sues Defendant Inch for

monetary damages in his official capacity, such claim is barred by the

Eleventh Amendment.  "Absent a legitimate abrogation of immunity by

Congress or a waiver of immunity by the state being sued, the Eleventh

Amendment is an absolute bar to suit by an individual against a state or its

agencies in federal court."  Gamble v. Fla. Dep't of Health and

Rehabilitative Servs., 779 F.2d 1509, 1511 (11th Cir. 1986); *see also* Will v.

Mich. Dep't of State Police, 491 U.S. 58, 66 (1989) ("Section 1983 provides

a federal forum to remedy many deprivations of civil liberties, but it does

not provide a federal forum for litigants who seek a remedy against a State

for alleged deprivations of civil liberties.  The Eleventh Amendment bars

such suits unless the State has waived its immunity, or unless Congress

has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." (citations omitted)).  In enacting § 1983, Congress did not abrogate a state's immunity, <u>Quern v. Jordan</u>, 440 U.S. 332, 340-41 (1979); <u>Edelman v. Jordan</u>, 415 U.S. 651, 673 (1974), nor did Florida waive its Eleventh Amendment sovereign immunity and consent to suit in federal court under § 1983.  <u>Gamble</u>, 779 F.2d at 1520.  Plaintiff's claims for money damages against Defendant Inch in his official capacity thus fail as a matter of law.

## III. Recommendation

In light of the foregoing, it is respectfully **RECOMMENDED** that the motion of Defendant Inch in his official capacity to dismiss Count 1 for failure to exhaust administrative remedies be **DENIED**; the motion of Defendant Inch in his official capacity to dismiss Counts 4 and 5 be **GRANTED without prejudice**; the motion of Defendant Inch in his official capacity to dismiss counts 6 and 7 be **DENIED**.

It is further **RECOMMENDED** that the motion of Defendant Jones in her individual capacity to dismiss Counts 1 and 4 be **DENIED**, and the motion of Defendant Jones in her individual capacity to dismiss Counts 5, 6, and 7 be **GRANTED**.  Defendant Jones' motion seeking qualified immunity should be **DENIED**.  The motion of the Secretary to dismiss

Count 2 should be **GRANTED**.  The motion to strike the claim for monetary

damages against Defendant Inch in his official capacity should be

**GRANTED.**

   **IN CHAMBERS** at Tallahassee, Florida, on July 23, 2019.


                    <u>S/ Charles A. Stampelos</u>
                    **CHARLES A. STAMPELOS**
                    **UNITED STATES MAGISTRATE JUDGE**


                    <u>**NOTICE TO THE PARTIES**</u>

   **Within fourteen (14) days after being served with a copy of this
Report and Recommendation, a party may serve and file specific
written objections to these proposed findings and recommendations.
Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon
all other parties. A party may respond to another party's objections
within fourteen (14) days after being served with a copy thereof.  Fed.
R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the
electronic docket is for the Court's internal use only and does not
control.</u>  If a party fails to object to the Magistrate Judge's findings or
recommendations as to any particular claim or issue contained in this
Report and Recommendation, that party waives the right to challenge
on appeal the District Court's order based on the unobjected-to
factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**